UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| EDWARD DIXON,<br>    Plaintiff,<br><br>    v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.<br>and GREEN TREE SERVICING, LLC,<br>    Defendants. | )<br>)<br>)<br>)   Case No. 2:13-CV-227-PPS-PRC<br>)<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion to Compel Production of Documents Against Defendant Experian Information Solutions, Inc. [DE 37], filed by Plaintiff Edward Dixon on April 14, 2014, and Experian Information Solutions, Inc's Motion for a Protective Order [DE 43], filed by Defendant Experian Information Solutions, Inc. ("Experian") on April 30, 2014. The motions were fully briefed on June 18, 2014, and are ripe for ruling.

Plaintiff Edward Dixon alleges in his Complaint that Defendant Experian reported inaccurate information in his credit file about his Green Tree Servicing, LLC ("Green Tree") mortgage account in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"). Dixon's mortgage account was held by GMAC Mortgage until February 2013, at which point the GMAC Mortgage account was transferred to Green Tree. Dixon admits that his GMAC Mortgage account was discharged in bankruptcy but argues that his payment history with Green Tree should nevertheless have been reported by Experian because he continued to make mortgage payments to Green Tree post-bankruptcy. Dixon notes that GMAC Mortgage reported some post-bankruptcy payments before the transfer.

1

Dixon admits that he did not sign a reaffirmation agreement with GMAC Mortgage during his bankruptcy proceeding, which would have made him liable for the debt post-bankruptcy. Rather, Dixon alleges in his Complaint that he accomplished a "ride through" of the account during his bankruptcy proceeding because he continued to make the mortgage payments.

On May 29, 2013, when he requested and received a consumer credit disclosure from Experian, Dixon noticed that Experian was not reporting the payment history on his Green Tree account. That same day, Dixon disputed the reporting with Experian. Five weeks later, Dixon filed this lawsuit. By August 9, 2013, the disputed Green Tree mortgage account no longer appeared on Dixon's credit report because it was too old to be reported.

Experian, as a credit reporting agency, gathers and stores a vast quantity of credit information–approximately 2.6 billion trade lines, from approximately 30,000 different sources, belonging to an estimated 300 million customers, with approximately 50 million updates daily. Experian's File One database houses this credit information. Experian explains that File One does not store information on consumers in complete or assembled credit reports. Rather, Experian assembles its credit reports at the time of inquiry, utilizing the identification information that is provided by the requestor and comparing and contrasting the inquiry data to the information contained within the database at that moment in time.

Reports that are assembled and provided to third parties for purposes of evaluating credit risk and worthiness are called "credit reports." Reports that are assembled and provided to consumers who are the subject of the information are called "consumer disclosures."

Dixon served discovery requests on Experian, including seventy Requests for Production and forty topics for Experian's Rule 30(b)(6) corporate witness. Experian asserts that there is no factual

dispute about how and when it reported the account. Experian argues that the entire case will rise and fall on a single legal question, namely whether Experian has a legal obligation to report the payment history of an account that was discharged in bankruptcy. The universe of documents Experian believes to be relevant are communications between Dixon and Experian regarding the account at issue, communications between Experian and Green Tree regarding the account at issue, and Dixon's credit during that time period. Experian asserts that it has already produced 966 pages, which are all the documents that are relevant to these topics.

## A. Motion to Compel

In his Motion to Compel, Plaintiff Edward Dixon asks the Court to compel Defendant Experian to provide supplemental responses to his First Requests for Production, specifically to (1) produce all electronically stored information ("ESI") responsive to his First Requests for Production in its native or other usable electronic format, as originally requested by Dixon; (2) search for and produce any and all communications, including and especially any email communications, responsive to Dixon's various requests; and (3) overrule Experian's objections to the requests for production. Experian responds that the motion should be denied because Experian does not have any further relevant information or documents.

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to the party's claim or defense" and that "relevant information need not be admissible" but only "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The relevance standard encompasses "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Federal Rule of Civil Procedure 37 allows a party to file a motion to compel a response to a request for production. Fed. R. Civ. P. 37(a)(3)(B). For purposes of the rule, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

1. *Electronically Stored Information*

Federal Rule of Civil Procedure 34(b)(1)(C) provides that a party requesting production of ESI "may specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1)(C). In addition, Rule 34 sets out procedures to be used for producing ESI:

> **(i)** A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> **(ii)** *If a request does not specify a form for producing electronically stored information*, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> **(iii)** A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(2)(E)(ii) (emphasis added).

The 2006 Advisory Committee Note explains that the Rule allows the requesting party to designate the form in which the ESI is to be produced and that "[s]pecification of the desired form or forms may facilitate the orderly, efficient, and cost-effective discovery of electronically stored information." Fed. R. Civ. P. 34 (2006 Advisory Committee Note). If the responding party objects to the form sought by the requesting party, the parties must meet and confer to resolve the issue, and if an agreement cannot be reached, a motion to compel may be filed with the court. If the form of production is not specified by agreement of the parties or by the Court, the "rule does not require

a party to produce electronically stored information in the form in which it is ordinarily maintained, as long as it is produced in a reasonably usable form." *Id*.

Federal Rule of Civil Procedure 26 provides for specific limitations on ESI:

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Fed. R. Civ. P. 26(b)(2)(B).

Pursuant to Rule 34(b)(1)(C), Dixon explicitly requested that Experian produce electronically stored information ("ESI") in the electronic form in which it is normally kept:

> In accordance with Fed. R. Civ. P 34(b)(1)(C), Plaintiff requests that Defendant produce all electronically stored information which would be responsive to these Requests in native format unless that format is one which can only be read by Defendant's proprietary software. If the requested electronically stored information can only be read by Defendant's proprietary software and if that information can be exported into an electronic format which can be read by nonproprietary software (such as Microsoft Word, WordPerfect, or Pages for word processed information; Microsoft Outlook "pst" format or Mac Mail for email; Microsoft Office Access, Microsoft Excel or Mac Numbers for database information) then Plaintiff requests that such information be produced in that electronic format. With respect to Documents or Communications which already exist as .pdf files, copies of those .pdf files, including any metadata, should be produced.

(Pl. Br. Exh. G) (emphasis added). Dixon further defined the applicable terms:

> 1. The term "electronically stored information" or "ESI" should include: word processing documents; other documents; e-mail messages and any attachments to such messages; electronic spreadsheets; image files; video files; audio or sound files; presentations (e.g., Microsoft Powerpoint files); and databases. Each and every Request should be read to require the production of any and all responsive electronically stored information. In other words, if the Document or Communication requested is one which is stored electronically then the electronically stored Document or Communication must be produced.

> 2. The term "native format" generally means and refers to the original format of a type of electronically stored information in which such information was embodied at the time it was created by the software application used to create it.

*Id*.

Experian initially produced the responsive information in unsearchable .pdf format. In its response to the Request for Production, Experian did not address ESI or object to Dixon's ESI specifications. Thus, Experian waived any objection to the ESI format requested by Dixon pursuant to Rule 34(b)(1)(C).

Dixon argues that the information contained in the .pdf documents produced by Experian is normally maintained in a fully searchable and manipulable electronic format. Dixon contends that his ability to effectively search or analyze the information is severely restricted by the unsearchable .pdf format. For example, Dixon requested that Experian produce "consumer disclosures" maintained in Experian's File One database. Dixon asserts that one way of extracting information from File One is to post a query to it through a database management system (Experian uses a MySQL management system) and then direct the system to run a database report that contains the results of that query. Dixon asserts that both the reports and the data from which the reports are generated are electronic. This is the format in which Dixon would like the information to be produced.

In its response brief, Experian explains that, in litigation, it produces a consumer's credit information from File One in two ways: (1) a consumer disclosure that is essentially a snapshot of a consumer's current credit information at the point in time it is requested; and (2) an Administrative Report ("Admin Report") that shows the historical changes in a consumer's credit file over time. Thus, information regarding how and when certain accounts were previously reported and how and

when certain accounts were deleted or blocked appears on the Admin Report. Experian's declarant states that there is no information that could be relevant Dixon's FCRA claim in the File One database that does not appear in either his consumer disclosures or Admin Report.

As for the consumer disclosures, Experian maintains copies of the consumer disclosures it has provided to consumers in the past in its archive system. The copies are stored in a format that is not text searchable. Experian has produced to Dixon all of his historical consumer disclosures as scanned .pdfs. Experian further explains that the "native format" of a consumer disclosure would appear different than the .pdf but any difference would be only technical and more difficult to understand because it would consist of plain text of fixed length and shortcut codes that instruct the computer what information to print. Nevertheless, Dixon originally requested the ESI in native format, and Experian did not object. Notably, Experian does not acknowledge in its response brief that Dixon properly designated the form for producing ESI in his initial discovery requests. It is not Dixon's burden to now explain why the native format consumer disclosures would be more useful to him than the .pdfs produced by Experian.

In his reply brief, Dixon clarifies that the electronically stored information is relevant to his claim under § 1681g. With permission of the Court, Experian filed a surreply on this issue, and Dixon filed a surresponse. Experian argues the merits of the § 1681g claim in an attempt to prevent discovery relevant to the claim. As asserted by Dixon, the § 1681g claim has not yet been dismissed from this case. Regardless of the ruling that is ultimately rendered on the merits, Dixon is entitled to discovery relevant to his pending claims, including the § 1681g claim. Thus, Dixon intends to compare the information in his file as it is stored electronically with the information included in the consumer disclosures to determine whether Experian provided him with "all information in [his] file

at the time of the request." 15 U.S.C. § 1681g. Whether Dixon will be successful on this claim is not a matter currently before the Court; the discovery sought is relevant.

Finally, Experian argues that production of the consumer disclosures in native format would be unfairly prejudicial because the production would include coding that would make it difficult for a lay person to understand. Experian contends that Dixon may show this native format production to the jury to suggest that Experian purposefully produced illegible and confusing documents. First, this is speculation on the part of Experian. Second, if Experian believes that Dixon will use this tactic at trial, Experian can raise the issue with the trial judge through a motion in limine.

Accordingly, the Court grants the Motion to Compel as to the request for consumer disclosures in native format and orders Experian to produce to Dixon the consumer disclosures in native format.

As for the Admin Report, Experian produced it as a scanned .pdf, which is a printed version of a native format. To accommodate Dixon's request in this case, Experian has offered to create an electronic version of the Admin Report that is searchable. However, this is not what Dixon has requested. Dixon has requested the Admin Report in native format. Accordingly, the Court grants the Motion to Compel as to the request for the Admin Report in native format and orders Experian to produce to Dixon the Admin Report in native format as well.

The Court finds that it is unnecessary for Experian to export the information for either the consumer disclosures or the Admin Report from File One into a readable format such as Microsoft Word or Excel because Experian is being ordered to produce the discovery in the format originally requested by Dixon.

2. *Communications; Emails*

In the background section of his brief, Dixon asserts that "Experian also presumably possess[es] electronically stored internal and external communications and written policies. Many of those communications potentially pertain to how mortgage accounts of bankrupt consumers are and should be reported . . . ." (Pl. Br. 7). Experian responds that its policy for the reporting of data follows the guidelines of the Credit Reporting Resource Guide ("Guide") published by the Consumer Data Industry Association ("CDIA") to report accounts included in bankruptcy. Experian has already produced a complete, text-searchable version of the 2012 Guide, and Experian argues that no further information need be produced.

Dixon replies that Experian has promulgated the policies through the CDIA, which Dixon asserts was created by and is run by Experian and the other consumer reporting agencies, and that Experian executives sit on the board of the CDIA. The Court finds that "internal and external communications," including those pertaining to how mortgage accounts of bankrupt consumers are and should be reported, are relevant to the policies included in the Guide and to whether Experian's procedures were reasonable. Although the Guide itself contains the procedures Experian follows, why those procedures are in place informs whether they are reasonable. The Court grants the Motion to Compel as to internal and external communications, including emails, and orders Experian to provide supplemental responses. If there are no such communications, then the supplemental response may state that no responsive communications exist.

Regarding the broader requests for the production of communications, including email communications, Experian responds that there are no emails responsive to any of Dixon's requests for production. Experian states that Experian did not have any email communications with Dixon

prior to the lawsuit, that Experian did not have email communications with Defendant Green Tree about Dixon's dispute, and that it is not Experian's practice to communicate about individual consumer disputes internally by email. Thus, Experian argues that there are no relevant emails to produce. However, it appears that Experian has not conducted a search to determine if there are, in fact, any such communications or emails. The Court finds that any such communications and emails are relevant to Dixon's claims. Experian's vague suggestion that its overall cost of litigation will go up if it has to search for emails each time it is sued by an individual consumer does not constitute persuasive evidence that searching for communications and emails is an undue burden in this case.

The Court grants the Motion to Compel as to the requests for communications and emails in Requests for Production Nos. 3, 7, 11, 16, 17, 22-26, 30-33, 35-42, 45-52, 62, 63, and 70 and orders Experian to amend its responses to the Requests for Production accordingly. If Experian has no responsive communications or emails after conducting a search, it may state so in its amended responses.

3.  *Specific Discovery Requests*

Dixon argues that several of Experian's responses are evasive or incomplete. The Court considers each in turn.

    a)    Request for Production No. 5–Periodic Backups

Request No. 5 asks for "[a]ny and all name scans, snap shots or other periodic backup of Plaintiff's file." Experian objected that the request is unduly burdensome, overly broad, neither relevant to the litigation nor reasonably calculated to lead to the discovery of admissible evidence, and vague and ambiguous as to the meaning of its terms. Nevertheless, Experian agreed to produce all consumer disclosures contained in Dixon's credit file.

Dixon asserts that Experian "must perform some sort of periodic backup of its File One database. It simply cannot be otherwise." (Pl. Br. 17). If the backups exist, Dixon argues that they would show the content of his credit file at those various points in time, which he argues will provide information relevant to the reporting of the Green Tree account at issue. Experian responds first that any periodic backups are irrelevant because there is no factual issue as to how the Green Tree account was reported at various times. Rather, at all relevant times, Experian reported the Green Tree account as included in bankruptcy without reporting any payment history pursuant to the Guide. For the first time in his reply brief, Dixon responds that this request is relevant to his § 1681g claim, arguing that the backups would show what information was included in his file at various points in time, which could then be correlated to the disclosures Dixon received from Experian. He argues that the information is also relevant to his § 1681i and § 1681e(b) claims because GMAC Mortgage was reporting his post-bankruptcy payments for a period of time while Green Tree did not. Dixon argues that this discovery goes to the reasonableness of Experian's policy that post-bankruptcy payments not be reported. Yet, Dixon has not explained how periodic backups are relevant to the reasonableness of Experian's policy at issue. The Court finds that this request is not relevant as there is no dispute as to how the Green Tree information was reported by Experian.

In addition, Experian also responds that the request is unduly burdensome because periodic backups of Dixon's personal credit file do not exist. Experian explains that its periodic backups are of the system in the event of power failure and "is an extreme backup system that would be a monumental undertaking to access and, in any event, would not be the kind of fully searchable backup that allows for the kinds of documents requested" by Dixon. (Def. Resp. 12). Even if the discovery were relevant, the Court finds that the burden on Experian in compiling such "periodic

11

backups" that do not already exist outweigh Dixon's need for the information, especially given that the Court has ordered Experian to provide Dixon with the consumer disclosures in native format. The Court denies the Motion to Compel as to Request No. 5.

    b)        Request for Production No. 12–Matching Rules

Dixon withdraws this request in his reply brief. Accordingly, the Court denies the motion as to Request No. 12.

    c)        Request for Production No. 13–Metro Codes

Request No. 13 asks for "[a]ny reported or stored Metro codes which relate in any way to the tradeline at issue in this case." Experian objected that the request is overly broad, unduly burdensome, unlimited in scope, irrelevant, and ambiguous. Nevertheless, Experian indicated that it would produce "relevant documents that are responsive to the Request, including confidential documents that are subject to the Protective Order."

In the motion, Dixon makes the broad assertion that Experian has refused to provide the key documents requested; yet Dixon does not identify what responsive documents are missing. Experian responds as much, stating that it has already produced its "E-OSCAR code sheet" and "Glossary of Account Conditions and Payment Status (Version 8–Numeric)," which Experian states include all the codes Dixon needs to interpret the reports produced regarding his credit file. In his reply brief, Dixon argues that documents containing the codes in the File One database or reported from its File One database regarding Dixon's Green Tree account will help him determine whether Experian produced all the information contained in his credit file, which is relevant to his § 1681g claim. Yet, Dixon does not refute Experian's statement that it has provided Dixon with all the codes necessary to interpret the reports produced regarding his credit file.

12

However, because the Court is ordering Experian to provide Dixon with consumer disclosures and the Admin Report in native format, if there are additional codes necessary to understand the native format disclosures, the Court grants the motion as to Request No. 13 only to that extent and orders Experian to produce any such codes to Dixon, subject to the Protective Order in place in this case.

    d)    Requests for Production Nos. 16 and 17–Collection Procedures

Dixon withdraws these requests in his reply brief. Accordingly, the Court denies the motion as to Requests No. 16 and 17.

    e)    Request for Production No. 19–eOSCAR Documents

Dixon withdraws this request in his reply brief. Accordingly, the Court denies the motion as to Request No. 19.

    f)    Requests for Production Nos. 20-23, 24-33, and 34-70

As for Requests 20-23, Dixon represents that counsel for Experian stated during the parties' meet and confer that Experian was not withholding any documents responsive to these requests. In the motion, Dixon argues that if there are no responsive documents, then Experian's numerous written objections are nonsensical, and it appears that Experian is withholding information. For Requests Nos. 24-33, Dixon states that counsel for Experian represented during the meet and confer that counsel does not know whether responsive documents exist and has not sought to discover them. For Requests Nos. 34-70, Dixon represents that Experian refuses to produce documents in response to these requests.

In his brief, Dixon makes no argument in support of any the individual requests nor refutes any of Experian's properly raised objections to the written discovery, many of which are unique to

13

the individual requests. In its response brief, Experian states that it is not withholding any documents that are responsive to Dixon's requests and relevant to the case, notwithstanding all other objections. Experian states that there are no additional documents that bear on the issue of whether Experian should have been reporting the payment history of Dixon's Green Tree account. Dixon's suspicion that additional documents may exist is an insufficient basis on which to compel discovery.

However, because the Court has clarified that discovery related to Dixon's § 1681g claim is relevant given that the claim remains pending in this case, the Court orders Experian to review Requests Nos. 20-70 in light of that ruling and to serve Dixon with a supplemental response.

*4.     Conclusion*

Based on the foregoing, the Court grants in part and denies in part the Motion to Compel and orders Experian to comply with this Order on or before July 25, 2014.

Dixon asks the Court for an award of fees and costs for bringing this motion. Federal Rule of Civil Procedure 37(a)(5)(C) provides that, if a motion is granted in part and denied in part, the court may, after giving an opportunity to be heard, apportion reasonable expenses for the motion. Fed. R. Civ. P. 37(a)(5)(C). The Court declines to award any expenses related to this motion.

**B. Motion for Protective Order**

In its Motion for Protective Order, Experian asks the Court to issue a protective order pursuant to Federal Rule of Civil Procedure 26(c)(1) because Dixon's Rule 30(b)(6) deposition notice exceeds the scope of discovery permitted by Rule 26(b). Initially, Dixon's deposition notice identified forty topics; through a meet and confer, the parties reduced the number of topics to thirty-one. Experian now requests protection from six of the remaining topics that it continues to believe are not relevant to this case.

As an initial matter, the Court rejects Dixon's argument that Experian failed to appear at the scheduled May 2, 2014 Rule 30(b)(6) deposition when Experian's Rule 30(b)(6) witness appeared and answered questions regarding all but the six disputed topics. Federal Rule of Civil Procedure 36(d)(2) provides that a "pending motion for a protective order," such as the one now before the Court, justifies the witness's failure to respond to questions on the disputed topics. Experian filed the instant Motion for Protective Order on April 30, 2014, two days prior to the May 2, 2014 Rule 30(b)(6) deposition.

Rule 30(b)(6) depositions are limited by the scope of discovery in Rule 26(b), which as set forth in the context of the Motion to Compel, provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to the party's claim or defense" and that "relevant information need not be admissible" but only "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The relevance standard encompasses "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund Inc.*, 437 U.S. at 351. Rule 30(b)(6) deposition notices may also be subject to a protective order at the request of the party from whom discovery is sought if the Court determines that the standard set forth in Rule 26(c)(1) is met. Rule 26(c)(1) allows the Court to issue a protective order forbidding discovery "for good cause, . . . to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). The Court considers each of the six disputed topics in turn.

*1.    Topic 10: Periodic Backups*

In the context of the Motion to Compel, the Court found that the request for production seeking periodic backups was not relevant. Dixon makes the same arguments on this motion in

15

support of the related deposition topic. For the same reasons set out in the Motion to Compel, the Court finds that this deposition topic is not relevant and grants the Motion for Protective Order as to Topic 10.

*2. Topic 11: Exporting of Consumer Credit File from the File One Database*

In ruling on the Motion to Compel, the Court ordered Experian to produce the consumer disclosures in native format and found that it is unnecessary for Experian to export the information for either the consumer disclosures or the Admin Report from File One into a readable format such as Microsoft Word or Excel. Thus, the Court grants the Motion for Protective Order as to Topic 11.

*3. Topic 12: Email Records*

Topic 12 seeks information about "[h]ow Experian maintains its email records." In ruling on the Motion to Compel, the Court ordered Experian to produce any responsive communications or emails. Thus, it is unnecessary for Dixon to pursue this topic in a Rule 30(b)(6) deposition. The Court grants the Motion for Protective Order as to Topic 12.

*4. Topic 13: Communications Between Experian and CDIA*

In ruling on the Motion to Compel, the Court ordered Experian to produce any communications regarding how mortgage accounts of bankrupt consumers are and should be reported. Should Experian produce such responsive communications and should any of them be between Experian and CDIA, then Dixon is entitled to pursue Topic 13 in a Rule 30(b)(6) deposition. Thus, the Court denies the Motion for Protective Order as to Topic 13.

The Court orders Dixon to notify Experian within fourteen days of receiving Experian's supplemental discovery responses, if they contain the production of responsive communications

between Experian and CDIA, of whether Dixon intends to conduct the Rule 30(b)(6) deposition on Topic 13. The deposition shall take place within twenty-eight days of that notification.

5. *Topic 26: Detailed Explanation of FCRA Attributes*

Topic 26 seeks information about "[w]hether there are any prior drafts, editions or versions of Experian's Detailed Explanation of FCRA attributes." Experian objected that the topic is overbroad, irrelevant, vague, and ambiguous with respect to the term "Detailed Explanation of FCRA attributes."

Experian notes that, to the extent Dixon is referring to a confidential one-page document that was produced in another lawsuit that counsel for Dixon filed against Experian–a document with the heading "Detailed explanation of FCRA attributes"–that document is irrelevant to the issues in this case. That document has not been produced in this case. Experian also suggests that, if counsel for Dixon is using confidential information produced in another case to pursue this litigation, he is arguably in violation of the protective order in the other litigation.

In his response brief, Dixon argues only that it is normal to request prior drafts of a document. Yet, Dixon fails to identify what the "Detailed explanation of FCRA attributes" is or acknowledge that the confidential "Detailed explanation of FCRA attributes" produced pursuant to a protective order in a separate litigation has not been produced in this case. The Court grants the Motion for Protective Order as to Topic 26.

6. *Topic 29: Identity of Experian Representative Regarding Queries*

Topic 29 seeks information about "[t]he identity of Experian representatives most knowledgable[sic] regarding searching and posting queries to the File One database." This topic has no bearing on any issue in this case and does not relate to the question of whether Experian should

have reported Dixon's payment history of his Green Tree account. Dixon's stated desire "to learn about how information contained in [Experian's] database can be queried" does not explain how the information is relevant to this case. The Court grants the Motion for Protective Order as to Topic 29.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** and **DENIES in part** Plaintiff's Motion to Compel Production of Documents Against Defendant Experian Information Solutions, Inc. [DE 37] and **ORDERS** Defendant Experian Solutions, Inc. to comply with the Court's Orders herein on or before **July 25, 2014**.

The Court hereby **GRANTS in part** and **DENIES in part** Experian Information Solutions, Inc's Motion for a Protective Order [DE 43] and **ORDERS** Experian to make a Rule 30(b)(6) witness available to Dixon for deposition on Topic 13, if Experian produces responsive communications between Experian and CDIA and if the deposition is timely requested by Dixon pursuant to this Order, within the time parameters set forth in this Order.

Consistent with its May 14, 2014 Order, the Court extends the discovery deadline to **September 5, 2014**, solely to allow Experian to serve its supplemental discovery responses by July 25, 2014, and for Dixon to take the deposition of Experian's 30(b)(6) witness on Topic 13, if appropriate, within the time frame set forth in this Order.

So ORDERED this 25th day of June, 2014.

s/ Paul R. Cherry  
MAGISTRATE JUDGE PAUL R. CHERRY  
UNITED STATES DISTRICT COURT

cc:   All counsel of record